SECURITY Co. *v.* RICHARDSON *et al.*

*(Circuit Court, S. D. Iowa, C. D.* December 12, 1887.)

PAYMENT—TO AGENT—AUTHORITY.

In an action for the foreclosure of a mortgage, the defendant pleaded payment and discharge. From the evidence, it appeared that the broker to whom payment had been made had been engaged in negotiating loans for complainant for about eight years; that during that time he had collected nearly all the interest as it became due on the different loans, and in many instances the principal also, though payable elsewhere; that, with reference to these loans, he had the management of the complainant's entire business, notifying delinquents, paying taxes, and attending to the foreclosures. Letters of inquiry regarding the manner of payment of the loans, and the broker's authority to accept payment of the principal before maturity, were referred by complainant to the broker for reply. *Held,* sufficient evidence that the broker was a general agent, duly authorized to accept payment of interest and principal, even before maturity.

Bill for the Foreclosure of Mortgage.

*Cummins & Wright,* for complainant.

*Lehmann & Park,* for defendant.

SHIRAS, J. In January, 1878, Thomas H. Richardson borrowed of William Bolles the sum of $2,500, and as security therefor executed a note or bond, and a mortgage on certain realty situated in Wayne county, Iowa, the principal and interest being payable at B. R. Abbe's office in Hartford, Connecticut, and the present suit is instituted for the purpose of foreclosing this mortgage; the defense being that the debt is fully paid, and the mortgage discharged and released on the record. It is admitted that the complainant holds the note and mortgage merely as trustee for William Bolles, and not in its own right, and the questions in dispute are to be determined the same as though William Bolles was the complainant. By its terms, the note came due November 1, 1882. On the first day of May, 1882, Richardson paid to one Hugh R. Creighton, of Des Moines, $1,700, and on the twenty-fourth of April, 1883, a sum sufficient, if added to the $1,700, to pay the note in full; and the question to be determined is whether these payments made to Creighton are to be deemed to be payments to Bolles, and binding upon him, Creighton having failed to account for the same. To determine this question it is necessary to ascertain the relation held by Creighton to the respective parties, and the authority he had from Bolles touching the matter of collecting and receiving moneys due him.

It appears that Creighton had organized at Des Moines, Iowa, a company, known as the "Union Loan Association," for the purpose of procuring and making loans of money on real estate in Iowa. To the borrower it was represented that the company had facilities for procuring loans from eastern capitalists; to the latter it was represented that through the agency of the company desirable loans could be made on first-class security. When a person in Iowa desired to procure a loan, he would apply to the company, and was required to sign a written application,

by the terms of which he appointed the Union Loan Company his agent to procure the loan; and the application also contained a statement of the amount desired to be borrowed, the time of loan, the security offered, and other like facts. These applications would be generally forwarded to some broker in the east, and he would place the loan with some one willing to take the same. The borrower paid a fixed commission to the Union Loan Association, and a portion thereof was paid to the broker in the east who finally placed the loan. The broker through whose agency the loans taken by William Bolles were negotiated was B. R. Abbe of Hartford, Connecticut. It also appears that in process of time Creighton virtually controlled all the business done in the name of the Union Loan Association, and practically the company became merged into Creighton. In all, nearly 200 separate loans were taken by Bolles, amounting in the aggregate to over $200,000. Upon these loans, for several years, Creighton collected interest, and also the principal of some. Finally, he absconded, and it appeared that he had received upon the loans made by William Bolles some $29,000 or more for which he had not accounted, including the payments made, as already stated, by the defendant in this case; and the question is, upon which of the parties must this loss fall? On behalf of the complainant, as the representative of William Bolles, it is contended that the note or bond was made payable at Hartford, Connecticut; that Bolles retained possession of the note and mortgage; and that no payment became complete until it reached Bolles' hands at Hartford; and that, as the defendant paid the same to Creighton when he did not have in his possession the note or mortgage, he paid at his peril, and simply constituted Creighton his agent to convey or forward the money to Bolles. On part of the defendant, the contention is that Bolles had made Creighton his general agent, with authority to collect all sums due on loans made through Creighton, and that Creighton had authority to receive the payments made, and that his reception thereof binds Bolles. The decision of the case must turn upon the conclusion reached as to the extent of the authority of Creighton as agent for Bolles.

On the argument, it was suggested that the Union Loan Association or Creighton must be deemed to be, throughout the transaction, the agent of the defendant, because such agency existed at the beginning. The agency conferred by defendant upon the company was to procure the loan, and when this was accomplished the agency terminated. In fact, the loan company or Creighton occupied different positions in these transactions; being at one time the agent of the borrower, and at another the agent of the lender. To determine under what circumstances he acted for the lender, and the extent of his authority, regard must be had to the dealings between Bolles and Creighton, which extended from 1877 until in 1885, during which time very many letters were exchanged between Bolles and Creighton, and between the latter and B. R. Abbe. Exception is taken to the letters passing between Creighton and Abbe, as not being evidence against Bolles; but it is not necessary to consider this exception, as the facts decisive of the case sufficiently appear from

the correspondence to which Bolles was a party, or of which he had actual knowledge, taken in connection with the other facts duly proven. From the evidence it appears that, in the beginning of the transactions between Creighton and Bolles, copies of the abstracts of title were forwarded for the latter's inspection, but finally he instructed Creighton that it was unnecessary to forward the same, as he (Bolles) would rely on Creighton's judgment in this regard. It also appears that Bolles relied upon Creighton to keep track of the taxes upon the various tracts of land mortgaged to the former, and also to keep him fully posted in regard to the conduct of the parties indebted, and their modes of doing business. When it became necessary to foreclose any of the mortgages, Creighton was intrusted therewith; and he brought the requisite suits, attended the sales, bought in the property when necessary, and had full charge of the property thus purchased. In many instances, he had sent to him the satisfaction pieces to be recorded, for the purpose of discharging the mortgage of record. Of the large amounts of interest paid on the loans made by Bolles, the larger part, if not the whole thereof, was collected by Creighton; and the same is true of so much of the principal sums as was paid by the mortgagees.

Unless William Bolles understood that Creighton was acting in his behalf, and as his agent, in the management of the loans in question, and in attending to the collection of the interest and principal thereof, it would follow that Bolles was willing to invest nearly $200,000 in loans to many different parties, and to leave the same without supervision in his interest; intrusting the control and management thereof to the agent of the debtors. The correspondence between Bolles and Creighton covers hundreds of pages and is too voluminous to be copied into an opinion. All that need be said of it is that it clearly shows that the relation existing between the parties thereto was that of principal and agent, and that Bolles understood that Creighton, in his behalf, was exercising full control over the loans made by Bolles in Iowa, and in his interest was keeping watch over the payment of taxes, the collection of interest and principal, and all other matters necessary for the protection of Bolles' interests in the investments thus made. In fact, had it been shown that Bolles had in writing originally appointed Creighton his agent and attorney in fact for the purpose of fully representing Bolles in these transactions, it is difficult to conceive of anything he would have been expected to do under such written authority which he was not, in fact, called upon to do in the letters written him by Bolles. That Bolles recognized and treated Creighton as his general agent, having charge over the investments made, with power to demand and receive payment of the principal and interest thereof, is the only reasonable conclusion deducible from the correspondence and acts of the parties. That Creighton so understood his authority is clear from his acts. Thus we find him issuing cards to mortgagees indebted to Bolles, in which it is said, after giving amount due, "Please remit at once, and save further costs;" in others, "If not paid at once, mortgage will be foreclosed." These cards required payment to be made to Creighton, and the recipients thereof could con-

strue them only as demands made by Creighton on behalf of the holder of the mortgage and note.

It appears that in this, and in some other instances, payments on the principal of the debt were made to Creighton before the maturity of the loan, and it is averred that even if it be true that Creighton was acting on behalf of Bolles in looking after and collecting these loans, nevertheless, receiving payment before maturity was not an act within the authority actually possessed by Creighton, and was of such an unusual character as to put parties upon their guard, and that in thus paying before maturity the debtors assumed the risk of the money actually reaching the hands of the creditor. If it be true that Creighton was in fact the agent of William Bolles in Iowa, charged with the duty of looking after his investments in this state, and with authority to receive payment of the principal and interest of the several loans, can it be said that receiving payment in advance of maturity was so clearly beyond the scope of his authority that third parties should have known that in so doing he was acting beyond his authority, and therefore not binding his principal? The exact facts of the case must be borne in mind. It is not a case wherein a debtor, wishing for his own convenience to make payment on a debt not yet due, comes to an agent of the principal, and induces him to accept payment before maturity. Creighton, who, as the evidence shows, was acting as agent for Bolles in the general management and collection of these loans, in sending to the debtors cards containing statements of the times when the interest payments would mature, and demanding payment thereof, includes therewith a statement that payments before maturity on the principal would be received. Thus in the notice sent to the defendant herein regarding the interest about to mature November 1, 1879, there is printed the following: "To accommodate those wishing to begin to pay off their loans in installments, payments of $50 and upward on the principal will be received, and interest stopped thereon if paid at the same time interest is." This statement is found in the various forms of cards sent out by Creighton generally. Now, when a debtor received such a statement in a notice sent to him regarding payment of interest, what would he have the right to infer? Upon inquiring, he would learn that Bolles had constituted Creighton his general agent for the purpose of managing and collecting his investments in Iowa, and that a similar notice in regard to payments by installments upon the principal had been sent to all, or nearly all, the parties owing debts to Bolles, and that the same had been sent for several successive years, and further, that Creighton had received many such partial payments made before due, and no complaint regarding the same had been made by Bolles. What other inference could be fairly drawn than that such announcement in regard to payment in advance was entirely authorized by Bolles. But, should it be said that the debtors should have still been skeptical touching the authority of Creighton to thus receive payments in advance of maturity, then the only course open to them would have been to apply directly to Bolles, in order to ascertain whether he knew of and approved of such action on part of his

agent. Such application was in fact made to Bolles. On the twenty-ninth of August, 1881, L. P. Hammond & Co., bankers, residing at Guthrie Center, Iowa, wrote to Bolles at Hartford on behalf of one Leander Kennedy, stating that the latter had made certain payments to Creighton on his note and mortgage held by Bolles, but had not received the coupons, and then the letter continues:

"Mr. K. refuses to have any further dealing with said Creighton, and will in the future send all money direct to you from this office. Mr. K. says his next coupon falls due October 1, 1881, at which time he would like to pay $800 or $1,000 on prin. Will you receive it, and give proper credit, and stop int. on same? Creighton sends out circulars stating that he will take installments on mtgs. you hold, but we don't care to send money to him. Several men have sent him money in this way, and only get his individual rect. therefor. Let us know if you will receive the $800 or $1,000 on mtge. or even the whole amt. of mtg. Ans. Do you know anything about the circulars?"

On the twenty-first of September, Bolles answered this letter as follows:

"HARTFORD, CONN., September 21, 1881.

"I have been absent for last 2 mos. I find your letter of August 29th. As to L. Kennedy loan, etc. I refer you to Mr. Creighton. The coupons I have rec'd pay for. I do not want to give up the good loans I have. When it is done, I require for unexpired time difference of interest. Now, it is 7 per ct. May coupon was paid to me. I notify Creighton."

On the same day Bolles writes to Creighton a lengthy letter about a number of the loans, and then states as follows:

"L. P. Hammond letter of August 29th I find here. Asks as to L. P. Kennedy $1,500 loan. Says he has paid you the two last coupon notes in due time for interest, but has not rec'd them, and that Kennedy refuses further dealing with you, and wants to pay to Hammond the October payt. of coupon. Also he would like to pay $800 or $1,000, or all on the principal, and stop int. etc. 'Creighton sends out circulars stating that he will take installments on mortgage, but we don't care to send money to him, money in this way, and only get receipt.' So he writes, and I notify him by card to apply to you for answer, and say coupons are paid and given up. Next, is your banker Jas. F. Joy. August 26th, he wants, as to Jno. W. Crippens, $900 to pay off his loan if I will take it, provided he will pay difference in interest between what it is, and what I can get for unexpired time. I card him, and refer to you."

Thus it appears when parties, being doubtful as to Creighton's action and authority in the premises, call Bolles' attention to the issuance of the circulars in regard to receiving payment by installments, he takes no exception thereto, and in addressing Creighton he does not signify any disapproval of such action. Furthermore, when asked the specific question whether he will receive payment in advance of the maturity of the principal, he refers the parties to Creighton; thus showing that this matter was confided to Creighton's judgment and decision. No other conclusion can be fairly drawn from the evidence than that Creighton had authority from Bolles to receive payment in advance of maturity and by installments, and hence payments thus made to him must be held to have been made by authority of Bolles, and when made they discharged so much of the debt due Bolles.

Counsel for complainant cite many authorities in support of the proposition that "the possession of negotiable paper is regarded as indispensable evidence of the authority to receive payment thereof;" and that as Bolles retained usually the possession of the coupons and notes until the money reached him, it follows that Creighton was not authorized by him to receive payment; and that, when he did so demand and receive payment, he was really acting on behalf of the debtors, as the conduit by means of which they forwarded the money due to Bolles. It certainly cannot be true that the only legal evidence of the authority to receive payment of negotiable paper is the possession thereof. The weight to be given to the possession, or lack of possession, of negotiable paper, depends upon the facts of each particular case, and the special issue involved. Had Bolles, for instance, written to the defendant, telling him that he had appointed Creighton his agent to collect and receive all moneys coming to him on his Iowa investments, and that he should pay the mortgage debt to Creighton, and that, upon such payment being made, he (Bolles) would forward the notes, mortgage, and satisfaction piece, would not the defendant have been entirely justified in making payment to Creighton, even though the note and mortgage were not in Creighton's hands at the time? In effect, this is exactly what Bolles, by his course of dealing with Creighton, did represent to the defendant and all others indebted to him in Iowa on loans made through the agency of Creighton.

The evidence conclusively shows that Bolles had constituted Creighton his agent; that he expected him to look after his interests in all matters connected with the loans made; that he authorized him to collect the moneys due, both interest and principal; that he expected the moneys to be paid to Creighton before the latter had in his possession the negotiable paper involved; that innumerable payments were in fact thus made, and such payments were in all instances approved by Bolles; that he knew that Creighton had announced by circular that he was ready to receive payment by installments on the principal of the mortgages due Bolles, and that he took no exception thereto, but in fact approved and confirmed the action of his agent in this particular. Under such circumstances, it is useless to urge that the protection accorded to negotiable paper on grounds of public policy and convenience requires the court to hold that the consequences of the rascality of Creighton should be visited upon the debtor, rather than upon the creditor, who placed it in his power to commit the wrongs whose consequences must be borne by some one. There is no question in the case arising out of the law of negotiable paper. The issue is between the original creditor and debtor, and it turns upon the question whether Bolles did or did not constitute Creighton his agent, with authority to receive payment in his behalf of the sums due him. The evidence shows that such agency and authority existed, and hence it follows that the mortgage debt in question was fully discharged by the payments made to Creighton, and hence the bill must be dismissed on the merits, at cost of complainant.